Fisk Electric Company v. DQSI, L.L.C., Western Security Company. Good morning, Your Honors. Tom Cowen for Fisk Electric, the appellant. You may proceed. Thank you. Your Honors, may it please the Court, the key issue here is simple. If fraud vitiates everything it touches, under what circumstances is the victim of the fraud held to have caused his own demise? We know from Restatement III that contributory negligence is no defense to an intentional tort. DQSI and their attorney, an officer of the court, knew when they signed the release that we're here for today that the request for equitable adjustment for Fisk's delayed damages was worthless because DQSI, two years previously, had already released the court from payment of any claims for delayed damages. Can I ask a question? The name of this thing, the request for equitable adjustment, it has a kind of a quality just in the sound of it, maybe completely different in practice, that if you've been done in in some way, you can come in and request an equitable adjustment. Is that how the thing works? Yes. As you said when you were mentioning your description, is this a practical thing? It's very practical and it's done in all core jobs, particularly in one. You know, this is a Katrina situation. One day this changes, the next day this changes. So there was 464 days of delay. So that's when the subcontractors get to provide the evidence of their delayed damages and it's called an OER. But the subcontractors can't deal directly with the government. That's an important point. That's exactly right. They can only deal with the general and the general deals with the government. That's right. That's what the Miller Act is there. And, Your Honor, you know, we can talk about federal and state law, but for fraud it's pretty much what you learned in kindergarten. And Article 1954 of the Louisiana Civil Code basically says that if you are in a relationship of confidence, and that's where we are here because we cannot talk directly to the court. It's not a fiduciary duty, I don't believe, for the general contractor. But we are in a position of confidence. So the district court found that there indeed was fraud, but that, I'm sorry? Twice. But that because it was known about, and Louisiana law said if you knew about it you couldn't recover. But your position is that the Miller Act allows you and that's not, it doesn't matter. Ma'am, what I believe Judge Lamel found as he went into the words sophistication, is Fisk sophisticated enough that they cannot be lied to? The question is begged, okay, if Fisk is sophisticated, Albert Einstein is sophisticated, but I bet you Tom Cowan could sell him a car without a carburetor. So we believe that the whole motion for summary judgment practice is put on its head here because you cannot judge credibility. Is Fisk a dingbat? Okay, let's say Fisk is a dingbat. But, you know, as the court found in Deepwater Horizon, you know, the foolishness of the plaintiff is not to be judged. And that's why we believe that the essence of this case is that once Judge Lamel found clear and convincing evidence, the release is rescinded. Fraud vitiates everything it touches. We cited the Texas case, the Italian Cowboys for that proposition. So how wide does that, does fraud also vitiate the settlement with the government? No, there's not a settlement with the government. It's the settlement between my client and DQSI. We can't, as you said, we cannot deal directly with the court. So what we're saying, Your Honors, is that once Judge Lamel held that Fisk was a victim of fraud, it was error for the court not to follow the Deepwater Horizon case, which this court, I'm sure, struggled through many of these situations, because it's right on point. And what Deepwater Horizon teaches is that this whole concept of sophistication on the part of a victim is to be looked at on the basis of justifiable reliance. And in Deepwater Horizon, this court was confronted with shrimpers from Mobile who put in their application for funds under the BP that most of their business was shrimping. And they got paid. And then later on, I guess it was at that point, Mr. Free's committee looks at the tax returns and finds that no, dredging was 80% of their income. And this court said that Mr. Free's committee did not have the affirmative obligation to go look at those tax returns, that it could rely on their application that in fact 80% of their business was shrimp. That is what we have here. We have a situation where my client relied on an officer of the court Mr. Madden. He was involved. If you look at the letters going in between, they had counsel back in December of 2013. We have evidence in the record against the motion for summary judgment from an attorney and from an engineer with Fisk that says we relied on Mr. Madden telling us that we could still go forward. Because they had not relinquished our rights. And this gets to another important point on the sophistication situation. Because my client didn't just take their word for it, which seems to be part of Judge Lammel's rulings. We filed a FOIA request to the court because our general contractor wouldn't give us the documents. So we're on notice. Why won't they just give it to us? So we do the FOIA request and we get these documents that are some people call them bilateral modifications, some call them change orders, but those are the documents that allowed the project to get extended for the 64 days. And all of those documents that we received doing our investigation were unsigned by Ms. Stubbs, who is the head of DQSI. Section 13E of that document says that these documents are not final unless they're signed by the contractor. So what does that tell us? We got a draft. And I think I put in my reply, Your Honors, that this is kind of a situation where a law clerk gives you, you tell them this is what I want, this is what I think. We've talked it over. I've read the law. Go draft this. Is that judgment in draft form from your law clerk final before you sign it? And that's what we have here. We are led to believe that this is a negotiable situation between our contractor, DQSI, and... And I'm trying to fast forward a bit. So what you're saying is that if those documents had been signed, it would have been clear to you that any claim for some kind of an adjustment for delay had already been negotiated and resolved, and you wouldn't have been able to go in and file another claim for an adjustment based on the delay. If their signature had been on it, you would have known it's over. That's exactly right. And in discovery, guess what? Out of the 34,000 pages in discovery after the second lawsuit, DQSI gives us a bilateral modification, and it's signed by Ms. Stubbs in 2012, two years before she executed the release that stole the money from our client. Counsel, I have a question about Louisiana law. Are you taking the position that even if Louisiana law applies, you still could prevail, or is all your hope in the Miller Act? Ma'am, we believe we're dealing with fraud. This could be kindergarten law. So it doesn't matter what law. Exactly. It's somewhat confusing to me that Louisiana law does not allow for, even in the face of affirmative misrepresentations, that you could still prevail under the Smoothie King case. Well, I believe under the Smoothie King, if you read it in peri materia with 1954, Code Article 1954, and 1953, which states that silence is a form of fraud, that, in fact, Louisiana, you know, agrees with what I'm saying, is that you just don't get away with fraud. That's what I believe Louisiana law says. So even if Louisiana law applies, you think you still should have won here? Absolutely. And not only that, Your Honor, but this whole concept that we did no investigation is absurd. We did the FOIA request. We talked lawyer to lawyer. But more importantly, look at the release itself. The release says we will give an AREA to the government. If they're saying they're going to do that, that's it. And the other thing is, it would be against the False Claims Act if DQSI submitted something that they knew they shouldn't be getting paid for. So we're thinking, if you look at the whole ball of wax, that there is no reason that these people would be lying to us. And the other thing is, they're not going to pay us the money. The Corps is going to pay us the money. For reasons unknown to us, in 2011, 2012, cash flow, whatever, they decided to get all their money in and just, you know, make life miserable for their subcontractors and see what they could get away with. We believe that this deep water, Your Honors, is dispositive. Because what we're talking about is just, you know, the concept to get out of fraud is justifiable reliance. And justifiable reliance does not mean a plaintiff must discover every aspect of a defendant's capacity for truth-telling. Mr. Madden knew, on the day his client signed the release, that it was fraudulent. Because she had already signed the way, released the payor, the government. So the release was dead on arrival. And they knew it. And that's what Judge LaMalle found. And to get into a credibility issue, he says there is clear and convincing evidence of fraud. Which, you know, I don't think anybody is disputing. No one's disputing here that DQSI got paid its 464 days, and we were there the whole time as the electrician, and we didn't get paid. I mean, the most basic concepts of law are here. And at the end of the day, we would ask that this Court reverse the summary judgment and render on the trial judge's finding of fraud that we move this matter on to determine the damages and the attorney's fees. Because the court has already found, the trial court has already found, that there was fraud. In our opinion, once the court finds that there's fraud, the release is rescinded, and the parties stand in their respective shoes, and we go to trial. And because they filed the summary judgment, I didn't file it, they did, and Judge LaMalle said there's clear and convincing evidence of fraud. You're asking us to, you said, you just want us to send it back on the question of the amount of damages. Yes, sir. Based on his finding of fraud. Reverse the summary judgment. That's first. But I believe, I submit, I suggest, that because the court, the trial court, based upon the evidence that the defendant wanted to give to it, found that there's clear evidence of fraud, that the only thing left to be tried are my client's damages and attorney's fees. Isn't that something that could be worked out in the district court, if you get the summary judgment reversed? Yes. Wouldn't Judge LaMalle be in a better position to know what his findings were, and whether they're conclusive and dispositive? I would defer to Judge LaMalle. And I thank you all very much. I reserve my five minutes. Thank you. Thank you. May it please the court. Timothy S. Madden, along with John Cangellosi, on behalf of the appellees, DQSI, LLC. Are you the same Mr. Madden, or is it a different Mr. Madden that we've been talking about here today? Same Mr. Madden. Okay. Thank you. And the other appellee is Western Surety Company. At the outset, DQSI and Western Surety have always denied any wrongdoing. And they have always denied that any fraud was committed in this case. Contrary to what... But you agree that Judge LaMalle found that DQSI was guilty of fraud. Do you agree with that? No, sir. All right. What occurred, Your Honor, and I'll read it, is Judge LaMalle, in the last sentence of his opinion, said, in light of very clear and convincing evidence of fraud, he did not make a factual finding as to whether fraud was or was not committed by DQSI or counsel. What he was trying to do, if you read the opinion, was trying to say, it doesn't matter whether fraud was or was not committed, because there... That's a different... If you want to say it doesn't matter, you would say, put that to one side, or assume arguendo. Or even if... Even if there was fraud. We write these things all the time. You don't say, in light of the clear and convincing fraud that's been demonstrated. He said evidence of fraud. Yes, evidence. And, Your Honors, I recognize how he phrased it. And it was very disturbing when we received it, especially in light of the fact that, at all stages of the proceedings, we had refuted that fraud had been committed. I think what has to occur is that we take a step back and realize, contrary to what the appellants are arguing, fraud does vitiate consent, but it does not invalidate every settlement agreement. It does not invalidate every agreement. And why is that? Contract interpretation is a matter of law. Judge LaMelle found that, with respect to this particular contract, a settlement agreement, which is a favored form of resolving disputes, that settlement agreements have to be interpreted just like every other contract. And that when you have an integration clause or a merger clause, as this Court has always found, you cannot justifiably rely upon purported misrepresentations, purported fraud. This Court has repeatedly found that when there is a merger or integration clause, the requirement for justifiable reliance is not present as a matter of law. In fact... So they had no business believing your client. Is that what you're saying? That's not what I'm saying, Your Honor. Tell me what you're saying. What I'm saying is, even if our client committed fraud, there were not justifiable in relying upon it with respect to the settlement agreement, because as this Court has succinctly stated in Hobbs v. Alcoa, which is a per curiam decision, Judge King was a member of the panel, this Court explained, this argument fails, however, because any alleged misrepresentation is barred by the settlement agreement's integration clause. The integration clause prevents the Hobbs, who were the plaintiffs in that case, from establishing justifiable reliance, a required element of a fraudulent inducement claim. In this particular settlement agreement, the parties included several provisions in it, one of which said, this agreement is the entire agreement between the parties. They then put another provision in it, and said each party has had an opportunity to consult with their own attorney and understand the facts and circumstances. And they went one step further and said, no promise, no inducement, or no other agreement that's not contained within the four corners of that settlement agreement was part of the agreement. That means, necessarily, by placing an integration clause into a settlement agreement, you are affirmatively stating that you're not relying on any representations, promises, inducements by any other party. It would turn the whole purpose of a merger clause or an integration clause. The settlement agreement in this case? The settlement agreement in this case, yes. Tell me what you agreed to do in that settlement agreement. Absolutely. What did your client agree to do? Our client agreed to do multiple things. One, it agreed to make a payment to FISC, which it did. It agreed to make a supplemental payment to FISC, an additional $25,000, which it did. It agreed to dismiss its claim against FISC that any claims that DQSI had for being delayed by FISC's own actions, it agreed to do. And it further agreed to submit, and this is very important, it agreed to submit an, or a, properly supported request for equitable adjustment. Why is that? Everyone knew that the 464-day claim had been waived.  and agreements had been entered into with the court. FISC, in fact, had signed off saying, we're entitled to these additional monies, but we're not asking for any more time. The whole reason why DQSI submitted and signed off with the court was based upon the representations by FISC, and this is what's very important here. If FISC wanted DQSI to submit the same 464-day request for equitable adjustment, it would have said, not submit a request for equitable adjustment, not submit a properly supported request, resubmit that exact same REA that FISC had already put together 14 months before the settlement. They could have said, we want you to resubmit it. We would have never agreed to that. And the reason why we would have never agreed to it is the parties knew the 464 days had been waived. And that's why, if you go back to the settlement agreement... So what were you agreeing to submit? We were agreeing to submit a properly supported request for equitable adjustment. The court even acknowledged... Based on what? The 464 days are off the table. So what is this based on, this request for equitable adjustment? It could have been any other claims or request for... What do you mean it could have been? You're telling me y'all knew exactly what... Both sides knew what you were talking about, so I'm asking you what it was. The court had already agreed, or had indicated, that it could be for additional equipment. It could have been for reasons, extensions of time... You're telling me what the court might have agreed to pay, but I'm asking you what the two parties here were agreeing that submission would be about. That's all I'm asking. And that's what I thought I was answering, Your Honor. And this is what we had agreed. All right. We didn't know what... We had no idea what FISC wanted to do in its REA. We were telling them, if you properly support it, whether it's for additional equipment, whether it's for additional man hours, whether it's for additional days, it was up to them. We didn't know FISC's business. So you were just agreeing on categories of potential requests. And that's why it's exactly right. We agreed that it's a properly supported request for equitable adjustment. And that's why when they resubmitted the same REA that had already been submitted in February of 2013, we said we can't certify this to the court. We told them right then, before the settlement agreement was signed, and this is a very important point, we refused to submit what they gave us. They, FISC, go back to the magistrate to enforce the memorandum of agreement. And Magistrate Knowles orders us to submit, pursuant to court order, what FISC had provided to us. Now that is a very important point because the settlement agreement is not signed for two months afterwards. The request for equitable adjustment, you have to have an understanding of the timeline here. FISC tells us in December 2010, excuse me, December 10, 2013, we've done a FOIA request to the court. It appears that the 464 days have been waived. We go to mediation in April of 2014. We say we will submit... So when they tell you it appears that it's been waived, do you say, yeah, we agree it has? We do. Contrary to what FISC says, we said call us, we'll discuss with you. FISC failed to follow up with us. We reached out, the record establishes, FISC actually states they never responded to us. That is simply false. There's an email from Mr. Stanley, two emails from Mr. Stanley Lee confirming that he has called Pat Klein, the author of it, to discuss because it's clear that Mr. Klein understands that that 464 days is waived. And this is why it's so important. If FISC wanted us to resubmit the exact same REA, a claim for 464 days, they knew we had rejected it. They knew they had to go back to the district court to enforce the memorandum of understanding that had come from the mediation. And the settlement agreement isn't signed for two months later because we're going back and forth to say, look, we can't certify the 464 days. So if they wanted to change it and put a recitation in the agreement that said, hey, we're relying on you for saying the 464-day claim is a thing, they didn't do that. They didn't say resubmit the REA that has already been rejected. They didn't say, hey, you'll agree to resubmit the REA that Judge Knowles, Magistrate Knowles, has ordered that you submit. That's not what they did. The settlement agreement actually states we will submit a properly supported REA. And in fact, when the court rejects it, the court says they were still willing to consider other claims because a request for equitable adjustment, if it's different days or caused by something different, had FISC presented evidence that they were delayed or had damages or had extra materials or needed different equipment, whether it be for different site conditions, whatever the case may be, the court was saying, give us the information. We will process it. The court wants people properly compensated for the work they do, but what they're not going to do is pay twice for it. And that's why this concept... Well, who got paid the first time for it? Well, that's just it. You said they're not going to pay twice for it. And that's just it. They didn't pay for the full time. They did not pay for the full 464 days. And the reason why is even in the record before the court... What did they pay? I don't recall, Your Honor. To whom did they pay? They paid certain funds to DQSI, which in turn was based upon and monies went to various subcontractors, including FISC. They paid FISC, they paid DQSI, and they paid other subcontractors based upon what the delay was and who was impacted. The court made the determination. All monies that DQSI received that were based upon... The court made the determination, but it was pursuant to a request from DQSI, wasn't it? It was pursuant to a request by DQSI that included requests because before DQSI submitted it, we went to our subcontractors. Hey, were you delayed because they found asbestos in this wall? Any contractor who was potentially delayed because the project, for example, asbestos was found and it was a change in conditions on the project, any contractor that was impacted, we went to them and said, give us your impact that this change has on you. Give us the impact. FISC did it. And when FISC submitted it, it said here's our extra costs and there was a spot on the form. Have you been delayed? Are there additional days? And FISC filled in zero or left it blank. So to answer the question, DQSI was paid, but the funds that DQSI receives on a request for equitable adjustment, it then has to pay its subcontractors based on what was paid to us. So FISC was involved in this process all along. And what's important here, it's a question, like Judge LaMalle found, it's a question of law. There's no dispute in this case that the REA, excuse me, the settlement agreement, there's no allegations that it's ambiguous. There's no insinuation that FISC isn't a sophisticated corporation. It's not disputed that they had three separate lawyers. It's not disputed that their general counsel who signed an affidavit who says he has 37 years of experience in innumerable settlement agreements, he agreed to an integration and merger clause. Counsel, isn't it at least a fact issue on all the big points you said that it wasn't going to be the REA again because Klein said he was reassured that he could submit it. So did Gregory Thomas, this experienced counsel, or the in-house counsel, that said he was specifically told by representatives of DQSI that DQSI had not received payment work done by FISC and therefore FISC could present a request for REA to obtain payment for these delay damages. He's linked it up as being specifically told in the negotiations that the delay damages had not been submitted and could submit them. So why isn't that at least a fact issue on this point that you said was well known to the contrary? Because the interpretation of a contract is a question of law. This Court has several decisions on it. I could cite the Court to it. So you're saying it doesn't matter what they say they were told. You just went and told us, though, for some length of time that you wanted to do something different. And I was just pointing out that there's evidence to the contrary in the record. I would agree that there is factual evidence to the contrary. That we don't dispute. It's not a weighing of the evidence, though. As Judge LaMalle stated, this is an issue of law. It's a question of law. Can we talk about the law, then? Why doesn't Deepwater Horizon control here? Well, Deepwater Horizon, even if you accept that Deepwater Horizon controls, Deepwater Horizon is based upon the U.S. Supreme Court, and it actually cites Field v. Manns. And in Fields v. Manns, the U.S. Supreme Court says if it is patently obvious that the information is false, or you discover evidence that you can't justifiably rely upon the representation, if you discover evidence that would call into question the veracity, it places an affirmative duty upon you to investigate it. Deepwater Horizon adopts the Field v. Manns case. In Fields v. Manns, and there's another very important reason why. So, one, there was a duty to investigate. Okay, are you willing to live or die for this claim, not in real life, but for this claim on Field? I was going to bring up a second point. Can I ask, are you ready to accept that Field is the correct law that we should apply in this context? Yes or no? You're quoting from it. I would say that Fields v. Manns supports our argument, but what I would tell this Court is the second reason why Deepwater Horizon is not controlling is the Hobbs v. Alcoa case and the cases cited within it. Okay, but Field, I want to ask you about this statement in Field, that a defendant who has been guilty of conscious misrepresentation cannot offer as a defense the plaintiff's failure to make the investigation or examination to verify the same. Fields says that explicitly. And I agree Fields says that, but Fields also says it is only where, under the circumstances, the facts should be apparent to the one of his knowledge and intelligence from a cursory glance or he has discovered something that should serve as a warning that he is being deceived, that he is required to investigate it. And that what I'm saying to the Court is the Hobbs v. Alcoa case which relied upon was a per curiam decision of this Court, which relies upon Armstrong v. American Shield, which also relies upon, cites U.S. Quest v. Kimmons, each state that if there is an integration or merger clause, whether in a contract, that as a matter of law, if you include such a provision in your contract that it is not a justifiable reliance, this Court in a decision, Hobbs v. Alcoa, Armstrong, and U.S. Quest, as well as the Bethea case, there are a litany of cases where this Court has said that with a merger or integration clause that says this is the entire agreement, and I apologize, I see the lights off, if I could finish this point. You may finish your answer to the question. Thank you. That if there is a merger or integration clause in a contract or a settlement agreement that any reliance on statements or promises or inducements that are not part of that agreement are not justifiable and that the settlement agreement must prevail, and that is exactly what Judge LaMelf found. Thank you. Thank you. Thank you. Everybody knew that the 464 days was waived. The material falsehood continues. All Ms. Stubbs or Mr. Madden, because they were all involved in this at any time, could have said the deal is done. In terms of additional information from the Court, the seminal document here, the bond modification that Ms. Stubbs signed and didn't tell us until 2016 when she gave us 34,000 pages of documents, maybe that's what Judge LaMelf was thinking about when he says this clear and convincing evidence. Closing statement. It is further understood and agreed that this adjustment constitutes compensation in full on behalf of the contractor, its contractors and supplies for all costs and markups directly or indirectly attributable to the changes ordered. This was a done deal. And they know it. And for them to say that my client knew it is just... When was the settlement agreement signed in relation to all of this? It was signed April 27, 2014. The FOIA request came back in December of 2013 and it had no signature by Ms. Stubbs. Well, what's your take, though, on the argument counsel just made about the significance of the integration clause in Hobbs v. Alcoa and all of their ilk? You're talking about the Hobbs case? Well, Hobbs v. Alcoa and the significance of the integration clause. Well, first off, Your Honor, if you read Hobbs and you were part of that decision... Yeah, but that was a golden oldie in my mind. It definitely... It goes back to 2007 and it's distinguishable because the court does not tell us what all transpired beforehand. We don't know if there's an REA. We don't know, you know, all of the things that we know in this case. So it's very distinguishable. And the case that we cite... Wait a minute, though. What you did here is you signed up a settlement agreement, I take it. You're a party to it. No, well, I was not personally. Yeah, I hope not. Your client was. The settlement is an agreement between who and who? Who are the parties? The settlement is between Fisk, who is a subcontractor under the Miller Act, cannot go to the court, with the general contractor, who is DQSI. Okay, so this is an agreement that settles up things between these two parties and it has an integration clause in it. And so what he's basically saying is when you signed that up, church was out, no matter what. I mean, I think that's the argument. We're saying, yes, what you just said, it's over with. It was over with because of that merger clause that they argued in their case. Now they've moved on to an integration clause. It doesn't matter, Your Honor, because the consideration, which is the very first part of the release, the sine qua non, is based upon a falsehood. So the whole contract, before you get to the merger clause and or an integration clause, is void because they lied. Did they argue integration clause in the district court or in their brief to this? No. They argued merger clause. Oh, that's what they're talking about, I think. Well, today he's brought up the Cobb case from 2007, which is an integration clause case. So why, you know, it comes down to, you know, why did Ms. Stubbs and DQSI not tell us I signed this document? Frankly, Your Honors, people make mistakes all the time. You could have gone to the court, they made a mistake, and let's get Fisk paid because they were sitting right there next to us, did everything we did, but they decided not to do it. I propose it, but it's probably because the questions that Judge Graves was asking is that they got paid the money that would be involved with my client and they want to keep it. We have to figure that out at trial if we have to go that far. So is your answer, though, if the integration clause is properly before us, the answer is that it's the face of the doc, the settlement agreement itself, the consideration is fraudulent on its face. Absolutely. That's your total answer. Otherwise, would you be bound by the integration clause and not allowed to say they told us this X, Y, and Z while we were negotiating the settlement agreement? If we had a document where we're selling a mule and the mule was there, I would agree that the integration or merger clause would be adequate, but if the mule isn't there that we're dealing with, then that merger clause would fall to itself. I'll tell you what, though. It's probably better not to sign a contract with something like that in it unless you're prepared to live with it. I'm not. I hear your argument, and it's very powerful. It may even be persuasive, but a clause like that in a contract is real tough to get passed. Yes, ma'am, it is, and they did it in deep water. And hopefully we're not as in deep water as those people were. As deep water, okay. Thank you. Appreciate your patience with me.